UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:16-cv-81494-DMM

JOHN J. MULVANEY, Individually and On
Behalf of All Others Similarly Situated,

      Plaintiff,

v.

THE GEO GROUP, INC., GEORGE C.
ZOLEY, and BRIAN R. EVANS,

      Defendants.

_____/

**DEFENDANT THE GEO GROUP'S MOTION TO DISMISS PLAINTIFF'S CLASS
ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

      Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Defendant The Geo Group, Inc. ("GEO Group" or the "Company") respectfully moves to dismiss all claims asserted against it in Plaintiff's Class Action Complaint ("Complaint" or "Compl.").

## INTRODUCTION

      Plaintiff's Complaint is a text-book example of a baseless "strike suit" following a precipitous and unjustified decline in the share price of the GEO Group that was caused solely by the U.S. Department of Justice's ("DOJ") unexpected announcement of a shift in policy regarding the use of private correctional facilities as a result of allegedly declining federal inmate populations.  The DOJ's announcement simply requested the assistance of the Federal Bureau of Prisons ("BOP") in reducing the scope of private correctional facility contracts "in a manner consistent with law and the overall decline of the [BOP's] inmate population."  Plaintiff seeks to capitalize on the drop in the GEO Group's stock price by accusing the Company of misrepresenting and failing to disclose that its correctional facilities were somehow less safe, less effective and less efficient than federally operated facilities, and by falsely claiming that these purported deficiencies were the cause of the DOJ's abrupt shift in policy concerning the use of private correctional facilities.

Plaintiff's entire theory, however, is premised on a gross distortion of the DOJ's underlying rationale for its sudden change in policy that it announced for the first time in an August 18, 2016 memorandum to the BOP entitled "Reducing our Use of Private Prisons." While the DOJ's announcement included vague, generalized comments about supposed short-comings of private correctional facilities in comparison to facilities operated by the BOP, the real reason for the DOJ's sudden change in policy was the recent reduction in the federal prison population and the purported decrease in the demand for private correctional facilities, and *not* any action or inaction attributed to the GEO Group.

Nevertheless, in a transparent effort to concoct a securities fraud claim from whole cloth, Plaintiff's boiler-plate Complaint simply references a handful of cherry-picked statements taken out of context from the GEO Group's public SEC filings, and alleges that these statements were *per se* fraudulent in light of the DOJ's change in policy.  As demonstrated below, Plaintiff's allegations have no merit, as each of the challenged statements are factually accurate and well-founded when placed in the proper context of the GEO Group's entire SEC filings.

Ironically, while Plaintiff accuses the GEO Group of omitting material information relating to its business and operations, the only significant omissions in this case are the *Plaintiff's* own intentional failure to reveal critical risk disclosures and cautionary statements in the GEO Group's SEC filings that are totally dispositive of Plaintiff's specious fraud claims. These disclosures – which were contained in each and every one of the GEO Group's Form 10-K filings during the entire Purported Class Period – explicitly cautioned the Company's shareholders (i) that it was dependent on revenues derived from a limited number of governmental clients such as the BOP; (ii) that the Company's potential failure to comply with extensive government regulations and applicable contractual requirements for operating its private correctional facilities could result in the loss of governmental clients; and (iii) that the loss or reduction of any of the GEO Group's contracts with any of these clients could potentially have a material adverse effect on the Company's finances, operations and stock price.

With this backdrop, a cursory review of the manufactured securities fraud claims in the Complaint confirms that Plaintiff has not and cannot adequately allege *any* basis remotely sufficient to survive scrutiny under the PSLRA and Supreme Court's seminal decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  First and foremost, Plaintiff has not

pled securities fraud with the specificity required by the PSLRA and Rule 9(b).  To the contrary, all of the statements contained in the GEO Group's public SEC filings were true and accurate and did not omit any material information.  Second, Plaintiff has not pled facts even attempting to establish the element of scienter as to each of the alleged misrepresentations and omissions, much less the required *strong inference* of scienter.  Third, Plaintiff's securities fraud claims are based primarily on non-actionable, forward-looking statements in the GEO Group's SEC Form 10-K public filings that were protected by the safe harbor provision of 15 U.S.C. § 78u-5. Lastly, Plaintiff fails to plead the required element of loss causation, as there are no facts in the Complaint establishing any plausible connection between the statements at issue and the proximate causation of Plaintiff's alleged losses.

In short, Plaintiff's bare-bone allegations of securities fraud are facially defective and amount to nothing more than a thinly-veiled effort to extort a settlement predicated entirely on the decline in the GEO Group's share price following a sudden and unforeseen shift in the U.S. Government's policy on its future use of private correctional facilities.  As more fully set forth below, Plaintiff's allegations are demonstrably false and his Complaint must be dismissed for failure to satisfy the fundamental pleading requirements of the PSLRA and Rule 9(b).

## FACTUAL BACKGROUND

### A.     The Class Action Complaint's Allegations.

This a putative securities class action brought against the GEO Group under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), on behalf of a putative class of all purchasers of GEO Group common stock from March 1, 2012 through August 17, 2016 (the "Purported Class Period").  Plaintiff's Complaint also asserts claims against individual Defendants George C. Zoley and Brian R. Evans (the GEO Group's CEO and CFO, respectively) for control person liability under Section 20(a) of the Exchange Act.

The GEO Group, formed in 1984, specializes in the ownership, leasing and management of correctional, detention and reentry facilities and the provision of community-based services and youth services not only in the United States, but in Australia, South Africa, the United Kingdom and Canada as well.  *See* Compl., ¶2; *see also* the GEO Group's SEC Form 10-K for

the fiscal year ended December 31, 2015, attached as **Exhibit 1**, at p. 3.[1]  The GEO Group conducts business through four separate segments:  U.S. Corrections & Detention; GEO Care (f/k/a Community Services); International Services; and Facility Construction and Design.  *See* Exhibit 1, 2015 10-K, p. 4.

Plaintiff's skeletal Complaint alleges that over a roughly four-year period from 2012 to 2016, the GEO Group made the following materially false and misleading statements in its annual Form 10-K filings with the SEC:

(i)     "We [the GEO Group] currently derive, and expect to continue to derive, a significant portion of our revenues from a limited number of governmental agencies," including three federal governmental agencies with correctional and detention responsibilities: the Bureau of Prisons, ICE and the U.S. Marshals Service.  Compl., ¶¶ 19, 28, 37, 46;

(ii)    "We operate each facility in accordance with our company-wide policies and procedures and with the standards and guidelines required under the relevant management contract."  Compl., ¶¶ 20, 29, 38, 47;

(iii)   "We have developed long-term relationships with our federal, state and other governmental customers, which we believe enhance our ability to win new contracts and retain existing business."  Compl., ¶¶ 20, 29, 38, 47; and

(iv)    Various agencies of the U.S. Federal Government were the only major customers that made up greater than 10% of the GEO Group's consolidated revenues for each of the preceding three years.  Compl., ¶¶ 20, 29, 38, 47.

After cherry-picking these isolated statements from the GEO Group's Form 10-K filings, Plaintiff then alleges, in purely conclusory fashion, that the statements were false and misleading because the GEO Group purportedly failed to disclose that (i) its facilities lacked adequate safety and security standards and were less efficient than federal BOP facilities; (ii) the GEO Group's rehabilitative services were less effective that those provided by BOP; and (iii) "consequently, the DOJ was unlikely to renew and/or extend its contracts with GEO."  Compl., ¶¶ 4, 62.

---

[1]  It is well-settled that on a motion to dismiss a securities fraud action, the Court is free to consider any public records and documents, including SEC filings, that are central to a plaintiff's claims or referred to in the Complaint.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1287 (11th Cir. 1999).  The Company has accordingly attached as exhibits to this Motion *all* of its relevant SEC Form 10-K filings during the Purported Class Period.

**B.     The DOJ's Abrupt Shift In Policy Concerning The Use Of Private Correctional Facilities.**

The sole basis for Plaintiff's securities fraud allegations is the release of an August 18, 2016 memorandum to the BOP entitled "Reducing our Use of Private Prisons," that was authored by DOJ Deputy Attorney General Sally Q. Yates ("DOJ Memorandum").[2]   The DOJ Memorandum announced an abrupt and unexpected shift in the DOJ's previously stated policy and practice regarding the use of private correctional facilities, which Plaintiff has blatantly mischaracterized in an attempt to concoct a baseless securities fraud claim.

In relevant part, the DOJ Memorandum asserts that:

- Between 1980 and 2013, the federal prison population increased by almost 800% at a far faster rate than the BOP could accommodate;

- By 2013, the federal prison population peaked at 220,000 inmates, and the BOP housed approximately 15% of its population, or nearly 30,000 inmates, in privately operated correctional facilities;

- Since 2013, the prison population has declined for the first time in decades due to several significant efforts to recalibrate the federal sentencing, including retroactive application of revised drug sentencing guidelines, new charging policies for certain offenders, and the Obama Administration's clemency initiative; and

- Despite these efforts, the DOJ still estimated that by May 1, 2017, the total private correctional facility population would consist of approximately 14,200 inmates.

*See* Exhibit 2, DOJ Memorandum, pp. 1-2.

Despite its own admission that the federal private correctional facility population will still exceed 14,000 inmates by mid-2017, and without any analysis of whether or not the BOP's facilities will have sufficient capacity to absorb this significant private correctional facility inmate population, the DOJ nevertheless requested the BOP's assistance in "beginning the process of reducing – and ultimately ending – our use of privately operated prisons."  Exhibit 2, DOJ Memorandum, p. 2.  The DOJ thus directed that, as each private correctional facility contract expired, the BOP either decline to renew the contract or substantially reduce its scope "in a manner consistent with law and ***the overall decline of the Bureau's inmate population.***"

---

[2]  A true and correct copy of the DOJ Memorandum (which Plaintiff references in, but did not attach to, the Complaint) is attached as **Exhibit 2**.

*Id.* (emphasis added).  It is abundantly clear that the DOJ's change in policy was in fact driven by the *reduction* in the federal prison population since 2013 and the alleged resulting *decrease* in the need for private correctional facilities, and *not* by any failure of the GEO Group to operate its facilities in compliance with applicable standards or its contracts with the BOP.

Further, while Plaintiff's Complaint focuses solely on the DOJ's negative comparisons between the performance of private correctional facilities vis-à-vis federal BOP facilities and services, the DOJ's comments are grounded entirely upon a false premise: that private correctional facilities can be compared to BOP facilities and services utilizing the same criteria and data.  Plaintiff, however, obscures that the DOJ's comments were based on its own self-serving characterization of a recent report by the DOJ's Office of Inspector General entitled "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons" ("OIG Report"), and further fails to disclose that in response to the draft OIG Report, the BOP itself "continue[d] to caution against drawing comparisons of contract prisons to BOP operated facilities *as the different nature of the inmate populations and programs offered in each facility limit such comparisons*."  A true and correct copy of the BOP's Response to the OIG's Draft Report (which is attached as Appendix 8 to the final OIG Report) is attached as **Exhibit 3**.[3]

As the BOP forewarned, private correctional facilities such as those operated by the GEO Group have vastly different prison populations comprised largely of non-resident aliens convicted of immigration, drug-trafficking, gang violence and related offenses.  This gives rise to diverse issues and problems that are unique to private correction facility inmate populations and which prevent any meaningful or accurate comparison to the safety, efficiency or effectiveness of private correctional facilities vis-à-vis BOP operated facilities.  Equally significant, the OIG

---

[3]  The DOJ Memorandum is central to the Plaintiff's fraud claims and it directly references the OIG Report, which itself includes the BOP's Response as Appendix 8.  *See* Exhibit 2, DOJ Memorandum, p. 1.  The Court is thus permitted to consider the BOP's Response in ruling on the GEO Group's Motion to Dismiss.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is central to the plaintiff's claim and undisputed); *Jackson v. BellSouth Telecommunications, Inc.*, 181 F. Supp. 2d 1345, 1353-54 (S.D. Fla. 2001) (the court may take into account the complaint's exhibits, matters of public record, orders, and items appearing in the record without converting a motion to dismiss into one for summary judgment, and this catalog is further expanded "where the plaintiff refers to certain documents in the complaint and these documents are central to the plaintiff's claim").

Report only addressed ways to improve the *monitoring* of private correctional facilities and it **did not** recommend that the DOJ even reduce the use of private correctional facilities, much less eliminate private correctional facilities all together. *See* BOP's Response to OIG's Draft Report, Exhibit 3 (wherein the BOP agreed with all four (4) of the OIG's recommendations for improving the monitoring of private correctional facilities).

      C.      **The Complaint Intentionally Omits Highly Material Disclosures Concerning the GEO Group's Business, Finances and Stock Price.**

While Plaintiff seizes upon bits and pieces of the GEO Group's public SEC filings as the basis for his securities fraud claims, he has predictably omitted from the Complaint numerous highly material risk disclosures contained in those same filings that are fatal to Plaintiff's claims.

As previously noted, the Court may properly consider the GEO Group's entire SEC filings – including all risk disclosures and cautionary statements – during the Purported Class Period in determining the sufficiency of Plaintiff's Complaint. *Bryant*, 187 F.3d at 1287; *see also* 15 U.S.C. § 78u–5(e) (authorizing the district court in a securities fraud action to consider "any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant"). This rule is particularly applicable in this action in light of Plaintiff's selective reference to the GEO Group's public SEC filings, as it "prevents a plaintiff from excising an isolated statement from a document and importing it into the complaint, even though the surrounding context imparts a plainly non-fraudulent meaning to the allegedly wrongful statement." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996). As shown below, this is the precise strategy employed by Plaintiff in pursuit of his specious claims in this action.

Most notably, Plaintiff's Complaint conceals that the GEO Group's Form 10-K filings for each and every year during the Purported Class Period contain a section entitled "Risk Factors" that discloses – in conspicuous bold, italicized font – a multitude of risks that "could materially adversely affect our business, financial condition, or results of operations," including the very same risks that Plaintiff falsely accuses the GEO Group of misrepresenting or omitting in its public filings. *See* Exhibit 1, 2015 10-K, p. 24; GEO Group 2011 10-K, attached as **Exhibit 4**, at p. 28; GEO Group 2012 10-K, attached as **Exhibit 5**, at p. 22; GEO Group 2013 10-K, attached as **Exhibit 6**, at p. 26; and GEO Group 2014 10-K, attached as **Exhibit 7**, at p. 26.

1.   **The GEO Group Explicitly Disclosed The Potential Loss of Its Private Correctional Facility Governmental Contracts.**

As referenced in the Complaint, the GEO Group filed its Form 10-K for the period ending December 31, 2015 with the SEC on February 26, 2016.  Compl. ¶51.  Among the risk factors prominently featured in the GEO Group's 2015 10-K were those "Risks Related to Our Business and Industry."  Exhibit 1, p. 31.  This section included an explicit warning about the potential loss of the Company's private correctional facility contracts:

> ***We are subject to the loss of our facility management contracts, due to terminations, non-renewals or competitive re-bids, which could adversely affect our results of operations and liquidity, including our ability to secure new facility management contracts from other government customers.***
>
> We are exposed to the risk that we may lose our facility management contracts primarily due to one of three reasons: (i) the termination by a government customer with or without cause at any time; (ii) the failure by a customer to exercise its unilateral option to renew a contract with us upon the expiration of the then current term; or (iii) our failure to win the right to continue to operate under a contract that has been competitively re-bid in a procurement process upon its termination or expiration.
>
> . . .
>
> The loss by us of facility management contracts due to terminations, non-renewals or competitive re-bids could materially adversely affect our financial condition, results of operations and liquidity, including our ability to secure new facility management contracts from other government customers.

Exhibit 1, 2015 10-K, p. 32 (emphasis in original).

The GEO Group also emphasized these very risks elsewhere in its 2015 10-K when discussing its governmental contracts:

> **Government Contracts — Terminations, Renewals and Competitive Re-bids**
>
> Generally, *we may lose our facility management contracts due to one of three reasons*: the termination by a government customer with or without cause at any time; the failure by a customer to renew a contract with us upon the expiration of the then current term; or our failure to win the right to continue to operate under a contract that has been competitively re-bid in a procurement process upon its termination or expiration.  Our facility management contracts typically allow a contracting governmental agency to terminate a contract with or without cause at any time by giving us written notice ranging from 30 to 180 days.  ***If government agencies were to use these provisions to terminate, or renegotiate the terms of their agreements with us, our financial condition and results of operations could be materially adversely affected.***

Exhibit 1, 2015 10-K, p. 32 (emphasis added).

Without question, these detailed disclosures placed the Plaintiff – as well as every other GEO Group shareholder – on notice that while the Company's business, finances and operations were well diversified across different geographical markets and segments, it could be exposed to adverse consequences in the event that the U.S. Government decided to terminate or non-renew its private correctional facility contracts with the Company.  This is the ***exact risk*** emanating from the DOJ's abrupt shift in policy on its future use of private correctional facilities that was announced for the first time in the August 18, 2016 DOJ Memorandum.

**2.**      **The GEO Group Explicitly Disclosed Its Revenue Dependency On A Limited Number of Governmental Clients.**

The GEO Group's public risk disclosures also contained a specific, detailed warning about the Company's revenue dependency on a limited number of governmental clients.  The Company's 2015 10-K thus disclosed that:

> ***We depend on a limited number of governmental customers for a significant portion of our revenues.  The loss of, or a significant decrease in revenues from, these customers could seriously harm our financial condition and results of operations.***

*See* Exhibit 1, 2015 10-K, p. 32 (emphasis in original).  Incredibly, this disclosure immediately preceded the very statement that Plaintiff's Complaint alleges was false and misleading:

> We currently derive, and expect to continue to derive, a significant portion of our revenues from a limited number of governmental agencies.  Of our governmental partners, four customers, through multiple individual contracts, accounted for 45.5% of our consolidated revenues for the year ended December 31, 2015.

*Id.*, pp. 33-34; *see also* Compl., ¶55.

And as Plaintiff acknowledges in the Complaint, the GEO Group even quantified this risk in its 2015 10-K in a section entitled "Business Concentration," which disclosed that various agencies of the U.S. Federal Government (which includes the BOP) comprised 45% of its revenues in 2015, 42% of its revenues in 2014 and 45% of its revenues in 2013. *See* Exhibit 1, 2015 10-K, p. 23; Compl., ¶56.

9

**3.** **The GEO Group Explicitly Disclosed the Risks Associated With Its Potential Non-Compliance With Regulatory and Contractual Requirements Or With Adverse Publicity Regarding Its Facilities.**

Plaintiff's central fraud allegation in this case is that the GEO Group misrepresented and omitted that its facilities were less safe, less efficient and less effective than comparable BOP facilities. While Plaintiff's fabricated claim is a complete red-herring and grounded on a gross distortion of the DOJ's Memorandum, the GEO Group's SEC filings nonetheless explicitly warned its shareholders that its past or future failure to comply with applicable regulations and contractual requirements could result in the loss of governmental contracts and clients:

> *Failure to comply with extensive government regulation and applicable contractual requirements could have a material adverse effect on our business, financial condition or results of operations.*

*See* Exhibit 1, 2015 10-K, p. 36 (emphasis in original). The GEO Group buttressed this risk disclosure with the following detailed cautionary statement:

> The industry in which we operate is subject to extensive federal, state and local regulation, including educational, environmental, health care and safety laws, rules and regulations, which are administered by many regulatory authorities. . . . *We may not always successfully comply with these and other regulations to which we are subject and failure to comply can result in material penalties **or the non-renewal or termination of facility management contracts**.*

*Id.* (emphasis added). In addition, the Company disclosed the risks associated from adverse publicity relating to the alleged or perceived conditions of its private correctional facilities:

> *Adverse publicity may negatively impact our ability to retain existing contracts and obtain new contracts.*
>
> Any negative publicity about an escape, riot or other disturbance or perceived conditions operated at a facility under a public-private partnership . . . may make it more difficult for us to renew existing contracts or to obtain new contracts or could result in the termination of an existing contract or the closure of one or more of our facilities, which could have a material adverse effect on our business.

*Id.,* at p. 36 (emphasis in original).

**4.** **The GEO Group Disclosed the Risks To Its Stock Price Associated With Changes In The Prospects for Private Correctional Facilities.**

In addition to all of the pointed risk disclaimers detailed above, the GEO Group further disclosed that its stock price might be adversely affected by a change in the industry concerning public-private partnerships in the correctional facility industry. The Company's 2015 10-K thus

disclosed that "[t]he market price of our common stock may vary substantially" and other factors that could affect the market price of the Company's common stock included "*changes in the prospects of public-private partnerships in the corrections and detention industry*."  *See* Exhibit 1, 2015 10-K, pp. 43-44 (emphasis added).  Once again, the GEO Group disclosed the exact risk to its stock price that Plaintiff now accuses it of hiding, *i.e.*, the potential for a sea-change in the federal government's policy governing public-private partnerships to reduce or eliminate altogether the use of private correctional facilities.

### 5.    The GEO Group Included Virtually Identical Cautionary Statements in its Form 10-K Filings During the Entire Class Period.

Plaintiff compounds his gross mischaracterization of the GEO Group's SEC filings by failing to acknowledge that these identical or substantially similar risk disclosures were contained in each and every Form 10-K that the GEO Group filed with the SEC during the Purported Class Period.  *See* Exhibit 4, GEO Group 2011 10-K, at pp. 24, 32, 34, 38, 45; Exhibit 5, GEO Group 2012 10-K, at pp. 19, 29, 31, 32, 38; Exhibit 6, GEO Group 2013 10-K, at pp. 21, 34, 36-37, 39, 46; and Exhibit 7, GEO Group 2014 10-K, at pp. 21, 34-35, 37, 39-40, 47.

### ARGUMENT

### A.    THE PSLRA IMPOSES HEIGHTENED PLEADING STANDARDS FOR FEDERAL SECURITIES CLAIMS.

In order to state a viable claim for securities fraud under Section 10(b) and Rule 10b-5 of the Exchange Act, Plaintiff is required to allege: (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the Plaintiff justifiably relied; and (5) that proximately caused the Plaintiff's injury.  *Bryant*, 187 F.3d at 1281.  In an effort to stem the rampant tide of abusive securities litigation and dispose of non-meritorious securities fraud claims at the pleading stage, the PSLRA significantly heightened the pleading standards for Section 10(b) claims.  *Id.*  As such, the PSLRA imposes two key requirements and provides that, if they are not satisfied, "the court *shall*, on the motion of any defendant, *dismiss the complaint*."  15 U.S.C. § 78u-4(b)(3)(A) (emphasis added).

First, Plaintiff is required to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief,… [to] state with particularity all facts on which that

belief is formed." *Id.,* § 78u-4(b)(1).  Second, Plaintiff is required, "with respect to ***each act or omission alleged*** . . . [to] state ***with particularity*** facts giving rise to a ***strong inference*** that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2) (emphasis added).  To satisfy this standard, all of the facts alleged, taken together, must give rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

Section 10(b) claims are also subject to Rule 9(b)'s requirement that fraud must be pled with particularity, a rule designed to thwart generalized fraud allegations that "enable[] [plaintiffs] to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation . . . ."  *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006).  Rule 9(b) required Plaintiff to plead "(1) precisely what statements were made in which documents or oral representations . . ., and (2) the time and place of each such statement and the person responsible for making . . . same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

## B.   PLAINTIFF'S BOILERPLATE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(B) OR RULE 10B-5.

Plaintiff's securities fraud claims must be dismissed because his Complaint fails to adequately plead any of the requisite elements under Section 10(b) and Rule 10b-5.

### 1.   <u>Plaintiff Fails To Plead Fraud, Including Falsity and Materiality, With Particularity.</u>

The Complaint must be dismissed as a threshold matter because Plaintiff has failed to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading" with the particularly required by PSLRA and Rule 9(b).

Plaintiff's entire case is built on his flimsy claim that the DOJ's decision to phase out the use of private correctional facilities is *per se proof* that the GEO Group misrepresented or omitted that its correctional facilities were inferior to BOP operated facilities.  Plaintiff's theory of liability is flawed from the outset, as the DOJ's Memorandum evidences nothing more than an abrupt policy change in the DOJ's future use of private correctional facilities due to supposedly declining federal prison populations.

While Plaintiff relies exclusively on the DOJ's vague, generalized comparisons between private correctional facilities and BOP facilities as the basis for his fraud claims, the Complaint fails to identify any facts with any specificity that would render any of the GEO Group's public statements concerning its facilities or services in any way false or misleading.  Conspicuously, the DOJ Memorandum does not cite to a shred of evidence that supports its broad-brush comparisons between the safety, efficiency or effectiveness of private correctional facilities versus BOP facilities, or that otherwise validates the DOJ's unsubstantiated characterization of the purported performance of private correctional facilities.  *See* Exhibit 2, DOJ Memorandum.

The most glaring flaw in Plaintiff's singular reliance on the DOJ Memorandum is the fact that there is no reference to the ***GEO Group*** anywhere in the entire document.  There are no facts, conclusions, or even bare allegations contained in the DOJ's Memorandum that any of the specific private correctional facilities *operated by the GEO Group* were in any way less safe, efficient or effective than facilities operated by the BOP.  Yet, Plaintiff's entire Complaint is premised on the GEO Group's alleged failure to disclose that *its* correctional facilities were inferior to BOP facilities and that the Company was likely to lose its contracts with the BOP as a result.  This is the slimmest reed imaginable upon which to hang a securities fraud claim under Section 10(b) and Rule 10b-5.

> 2. <u>The GEO Group's Alleged Misrepresentations Are, In Fact, Accurate.</u>

Plaintiff's Complaint similarly fails to allege a single fact showing that the GEO Group's challenged public statements in its SEC filings were anything but 100% true and accurate.

The first alleged misrepresentation is the GEO Group's statement that "[w]e currently derive, and expect to continue to derive, a significant portion of our revenues from a limited number of governmental agencies."  Compl., ¶19.  Significantly, this disclosure did not state what Plaintiff insinuates:  that the GEO Group expected or forecasted that these revenues from a limited number of government clients – including specifically the BOP – would continue either unabated, indefinitely, or at the same level as past years.  Undeterred, Plaintiff *implies* that this statement was false because the GEO Group must have known and failed to disclose that its private correctional facilities were less efficient, less effective or less safe than BOP operated facilities and that the Company was at risk of losing these revenues as a result.  *See id.*, ¶¶62, 63.

Plaintiff again seeks to distort the true facts and fabricate a claim that does not exist by intentionally concealing that the foregoing statement was actually contained in the "Risk Factor" section of the GEO Group's annual 10-K filing, and was immediately preceded by a disclaimer:

> ***We depend on a limited number of governmental customers for a significant portion of our revenues.  The loss of, or a significant decrease in revenues from, these customers could seriously harm our financial condition and results of operations.***
>
> We currently derive, and expect to continue to derive, a significant portion of our revenues from a limited number of governmental agencies.  Of our governmental partners, four customers, through multiple individual contracts, accounted for 45.5% of our consolidated revenues for the year ended December 31, 2015.  In addition, three federal governmental agencies with correctional and detention responsibilities, the Bureau of Prisons, ICE, and the U.S. Marshals Services, accounted for 44.9% of our total consolidated revenues for the year ended December 31, 2015 through multiple individual contracts . . .

*See* Exhibit 1, 2015 10-K, p. 32 (emphasis in original).

It should be painfully obvious to any impartial reader that the plain intent of these disclosures was to place the GEO Group's shareholders on notice that the loss or decrease in revenues derived from any of its limited governmental clients could have an adverse effect on the Company's financial position and stock price.  Plaintiff simply cut and pasted an incomplete portion of the GEO Group's full risk disclosure into the Complaint in a blatant attempt to create the false impression that the GEO Group was *affirmatively* stating its *expectation* that its revenues from limited governmental clients would continue unabated.  Placed in its proper context, however, this statement was an accurate disclosure of the obvious risks inherent in the fact that the Company's revenues are dependent upon a limited number of government clients.

Plaintiff has similarly failed to plead specific facts casting any doubt on the truth or accuracy of the GEO Group's statements in its annual 10-K's that it had "developed long-term relationships with our federal, state and other governmental customers, which we believe enhance our ability to win new contracts and retain existing business" and that "various agencies of the U.S. Federal Government were the only major customers that made up greater that 10% of the GEO Group's revenues for each of the preceding three years."  Comp., ¶20.  The Complaint is completely silent as to how or why these statements are misleading, and any attempt by Plaintiff to rely upon the DOJ's Memorandum is futile and inadequate since that document

14

neither references the GEO Group nor asserts any actual facts evidencing that these statements in the Company's 10-K filings were in any way false or misleading.

Lastly, Plaintiff has not alleged any facts demonstrating that the GEO Group falsely stated in its annual 10-K filings that it operates each of its facilities "in accordance with our company-wide policies and procedures and with the standards and guidelines required under the relevant management contract." Compl., ¶20. Instead, Plaintiff predictably relies exclusively on the DOJ Memorandum as *per se* evidence that these statements were somehow false and misleading, without any attempt to explain *how* or *why* this is so. *Id.* at 62-63. Yet, the DOJ Memorandum does not even reference the GEO Group, much less contain any facts to support the Company's alleged failure to operate its facilities in compliance with its own policies or the terms and conditions of its BOP contracts.

This critical point vividly illustrates the defective nature of Plaintiff's securities fraud claims. Plaintiff has not pled any facts establishing that the GEO Group had any contractual, legal or regulatory duty or obligation to operate its private correctional facilities in a manner that was *more safe, more efficient or more effective* than BOP operated correctional facilities. To the contrary, the GEO Group fully disclosed in its annual 10-K filings that it operated its facilities "in accordance with our company-wide policies and procedures and with the standards and guidelines required under the relevant management contract." *See* Exhibit 1, 2015 10-K, p. 5.

Consequently, even if the Court were to take the DOJ's Memorandum at face value and accept its comments on the perceived short-comings of private correctional facilities compared to BOP correctional facilities as the gospel truth, the DOJ Memorandum *still* would not provide any legally sufficient factual basis for the Plaintiff's fraud claims because there is nothing contained therein that remotely evidences the GEO Group's alleged failure to operate its facilities in accordance with its own policies or the standards and guidelines contained in its BOP contracts.

Simply stated, Plaintiff has failed to state a claim for securities fraud based on any of the allegedly false or inaccurate statements contained in the GEO Group's SEC filings.

3.     **The GEO Group's Disclosures Are Fatal To Plaintiff's Omission Claims.**

Plaintiff's claims of fraudulent omission are similarly defective and fail to state a claim under Section 10(b) and Rule 10b-5 as a direct consequence of the GEO Group's ample risk disclosures in its public SEC filings.

As detailed above, the GEO Group's annual Form 10-K filings during the entire Purported Class Period contained detailed risk disclosures and cautionary statements that fully and adequately warned of the potential adverse effects on its financial condition, operations and stock price.  These disclosures go to the very heart of the Plaintiff's fraudulent omission claims: the GEO Group's public SEC filings explicitly disclosed (i) the potential termination and loss of the Company's private correctional facility governmental contracts; (ii) the Company's revenue dependency on those limited number of governmental clients; and (iii) the Company's potential failure to comply with extensive government regulations and applicable contractual requirements and potential resulting loss of its contracts.  *See, e.g.,* Exhibit 1, 2015 10-K, pp. 32-34, 36.

Indeed, the GEO Group's annual SEC filings even disclosed that "*changes in the prospects of public-private partnerships in the corrections and detention industry*" could adversely affect the market price of the Company's common stock.  *See* Exhibit 1, 2015 10-K, p. 44.  Try as he might, Plaintiff cannot get around the fact that the GEO Group adequately disclosed the very same risk that forms the basis for this strike-suit, *i.e.*, a sharp, unjustified drop in the Company's stock price caused solely by the DOJ's change in policy concerning its public-private partnerships with private correctional facility contractors like the GEO Group.

Needless to say, these disclosures are fatal to all of Plaintiff's claims since it is axiomatic that "[a] plaintiff fails to plead an actionable § 10(b) claim predicated on the concealment of information if that information was, in fact, disclosed."  *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 116–17 (2d Cir. 1982).

4.     **Plaintiff Fails To Plead A Strong Inference of Scienter.**

Plaintiff's facially defective securities fraud claims must be dismissed for another fundamental reason:  the Complaint fails to plead facts sufficient to support *any* inference of scienter, much less the strong inference required by the PSLRA.

The element of scienter necessary to state a claim under Section 10(b) and Rule 10b-5 required Plaintiff to assert particularized allegations that *each defendant* acted knowingly or in a

severely reckless manner. *See Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1323 (S.D. Fla. 2004) (citing *Bryant*, 187 F.3d at 1283-87). "Severe recklessness" – the minimum a plaintiff must plead – "is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care [such that] . . . the defendant must have been aware of [the fraud]." *Ziemba*, 256 F.3d at 1202 (quotation omitted).

As the Supreme Court held in *Tellabs,* to survive dismissal a complaint must allege facts sufficient to make the inference of scienter "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of non-fraudulent intent." 551 U.S. at 314. To determine whether a complaint's scienter allegations are sufficient, a court "must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Id.*

Plaintiff's paltry scienter allegations in this action consist of a mere two paragraphs that are patently insufficient under the stringent PSLRA and *Tellabs* standard. The sole allegations of scienter in the Complaint consist of threadbare conclusions that (i) "Defendants were personally motivated to make false statements and omit material information necessary to make the statement not misleading in order to personally benefit from the sale of GEO securities from their personal portfolios;" (ii) "[i]nformation showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control;" and (iii) "[a]s the senior managers and/or directors of GEO, [Defendants George Zoley and Brian Evans] had knowledge of the details of GEO's financial affairs." Compl., ¶¶81-82.

The Eleventh Circuit has consistently admonished that barren allegations of "motive and opportunity" – exactly like those asserted in Plaintiff's Complaint – are inadequate to support a strong inference of scienter under the PSLRA. *See, e.g., Jiangbo Pharm. Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1261 (S.D. Fla. 2012). Indeed, "mere allegations that Defendants held senior management positions, had access to inside information, and therefore must have known of the falsity of certain statements is insufficient to plead scienter." *Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267, 1286 (S.D. Fla. 2008) (quoting *In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1303 (S.D. Fla. 2002)); *see also In re: Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1324 (M.D. Fla. 2002) ("In essence, the Amended Complaint merely alleges that these

Defendants 'must have known' because of the CEO and CFO positions that they held, and such pleading does not pass muster under the PSLRA.").

Plaintiff's Complaint merely parrots these same generalized scienter allegations that this Court has repeatedly found lacking, and fails to provide a scintilla of factual support for any claim that the GEO Group or its officers had knowledge of any alleged fraud. Furthermore, the Company's detailed forward-looking public risk disclosures discussed below – which address the very same matters Plaintiff alleges the GEO Group purportedly concealed – negates any inference of scienter. Plaintiff's glaring failure to plead any facts supporting a strong inference of scienter requires dismissal of the Complaint.

## 5.    Plaintiff's Claims Are Based On Non-Actionable Forward-Looking, Cautionary Statements.

In addition to his failure to specifically plead facts demonstrating any misrepresentation or omission by the GEO Group or any inference of scienter, Plaintiff's security fraud claims are also barred because the alleged misrepresentations at issue are clearly protected forward-looking statements entitled to "Safe Harbor" under the PSLRA.

In an effort to insulate public companies from potential liability for forward-looking statements and to encourage management to share opinions and projections, Congress included in the PSLRA a safe harbor that insulates corporate managers from liability for forward-looking statements. 15 U.S.C. § 78u-5. As a result, there is no liability for forward looking statements when the statements are identified as such and are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward looking statement[s]." 15 U.S.C. § 78u-5(c)(1)(A)(i). Where the alleged fraud is grounded on forward looking statements, dismissal is required regardless of the state of mind of the person who made the statement, be it negligent, reckless, or even knowing. *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 795 (11th Cir. 2010).

Here, the GEO Group's annual 10-K filings for the entire Purported Class Period included a conspicuous section entitled "**Forward-Looking Statements — Safe Harbor**" that warned its shareholders that each 10-K contained "forward-looking" statements within the safe harbor, including "statements regarding our future financial position, business strategy, budgets, projected costs and plans and objectives of management for future operations," and that "[t]hese

statements are not guarantees of future performance and involve certain risks, uncertainties and assumptions, which are difficult to predict."  *See* Exhibit 1, 2015 10-K, p. 79 (disclosing that "forward-looking" statements generally can be identified by the use of forward-looking terminology such as "expect" or "believe"); *see also* Exhibit 4, 2011 10-K at p. 82-83; Exhibit 5, 2012 10-K at p. 69-70; Exhibit 6, 2013 10-K at p. 83-84; Exhibit 7, 2014 10-K at p. 84-85.

The alleged misrepresentations that form the basis for Plaintiff's fraud claims – *i.e.*, that the GEO Group *"expected"* to continue to derive a significant portion of its revenues from a limited number of governmental agencies and that it *"believed"* its long-term customer relationships would enhance its ability to attract and retain existing business – are the epitome of non-actionable forward-looking statements that fall squarely within the safe harbor of the PSLRA.  *See* Compl., ¶¶19-20.  And in fact, the GEO Group Form 10-K filings repeatedly and explicitly identified the ***exact*** statements that form the core of Plaintiff's securities fraud claims as forward-looking cautionary statements that the Company could neither guarantee nor predict. For instance, the GEO Group's 2015 10-K identified its forward-looking, "cautionary statements" as including statements about (i) "our ability to win management contracts for which we have submitted proposals, retain existing management contracts and meet any performance standards required by such management contracts;" (ii) "our ability to estimate the government's level of dependency on privatized correctional services;" and (iii) "our ability to comply with government regulations and applicable contractual requirements."  *See, e.g.,* Exhibit 1, pp. 79-80.

Suffice it to say, these emphatic forward-looking, cautionary statements eviscerate all of the Plaintiff's allegations of fraudulent misrepresentation and omission against the GEO Group.

### 6.    Plaintiff Has Failed to Sufficiently Plead Loss Causation.

The Complaint finally must be dismissed for failure to plead facts establishing "loss causation," *i.e.*, that Plaintiff's alleged economic loss was caused by the GEO Group's "fraud."

A plaintiff asserting claims under Section 10(b) and Rule 10b-5 is required to sufficiently allege a causal connection between the alleged misrepresentations and the economic loss incurred.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005); *see also* 15 U.S.C. §78u-4(b)(4); *Robbins v. Koger Prop., Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997).  Even in a fraud-on-the-market case like this one, "the plaintiff must prove not only that a fraudulent misrepresentation artificially inflated the security's value but also that 'the fraud-induced

inflation that was baked into the plaintiff's purchase price was subsequently removed from the stock's price, thereby causing losses to the plaintiff.'" *Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013) (internal citations omitted).

Plaintiff fails to even attempt to make such a showing of proximate cause, nor can he given the truthful nature of the GEO Group's alleged misrepresentations and the vast risk disclosures contained in the Company's public SEC filings.  There is simply no connection between the GEO Group's alleged fraudulent statements and omissions, and the abrupt drop in the Company's stock price given its frequent public disclosures regarding the potential adverse consequences that could result from a change in the U.S. Government's policy on the use of private correctional facilities.  Indeed, throughout the entire Purported Class Period, the GEO Group specifically warned its shareholders that it derived significant revenue from a handful of governmental clients, and that it could be adversely affected in the event one of those clients decided to terminate or non-renew its contracts with the Company.  In short, the sharp drop in the GEO Group's share price on August 18, 2016 was undoubtedly caused solely by the DOJ's sudden announcement of its change in policy regarding its use of private correctional facilities, and not by the revelation of any alleged "fraud" by the GEO Group.

## CONCLUSION

For all of the foregoing reasons, The GEO Group respectfully request that Plaintiff's Class Action Complaint be dismissed in its entirety.[4]

---

[4] Since Plaintiff has not adequately pled a primary violation of Section 10(b) by the GEO Group in Count I of the Complaint, the dependent Section 20(a) claims in Count II against Defendants George Zoley and Brian Evans also fail and must be dismissed.  *See In re Royal Caribbean Cruises Ltd. Sec. Litig.*, 2013 WL 3295951 at *19 (S.D. Fla. Apr. 19, 2013) (dismissing Section 20(a) claim where plaintiffs failed to state a claim under Section 10(b)).

Respectfully submitted,

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095

By: /s/ *Brian P. Miller*
    Brian P. Miller, Esq.
    Florida Bar No. 0980633
    brian.miller@akerman.com
    Samantha J. Kavanaugh, Esq.
    Florida Bar No. 0194662
    samantha.kavanaugh@akerman.com
    Jonathan B. Butler, Esq.
    Florida Bar No. 056197
    jonathan.butler@akerman.com
    Ross E. Linzer, Esq.
    ross.linzer@akerman.com
    Florida Bar No. 073094

*Counsel for Defendant The GEO Group, Inc.*

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 28th day of September, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Brian P. Miller*

**SERVICE LIST**

Jayne A. Goldstein, Esq.
jagoldstein@pomlaw.com
POMERANTZ LLP
1792 Bell Tower Lane, Suite 203
Weston, FL 33326

J. Alexander Hood II, Esq.
ahood@pomlaw.com
Marc C. Gorrie, Esq.
mgorrie@pomlaw.com
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, NY 10016

Patrick V. Dahlstrom, Esq.
pdahlstrom@pomlaw.com
POMERANTZ LLP
10 South La Salle Street, Suite 3505
Chicago, IL 60603

Peretz Bronstein
peretz@bgandg.com
BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
60 East 42nd Street, Suite 4600
New York, NY 10165

*Counsel for Plaintiffs*

George S. LeMieux, Esq.
glemieux@gunster.com
jbuck@gunster.com
eservice@gunster.com
Jennifer B. Nicole, Esq.
jnicole@gunster.com
gwilkerson@gunster.com
eservice@gunster.com
Gunster, Yoakley, & Stewart, P.A.
450 East Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301

William Hill, Esq.
whill@gunster.com
mchase@gunster.com
eservice@gunster.com
Gunster, Yoakley, & Stewart, P.A.
600 Brickell Avenue, Suite 3500
Miami, FL 33131

*Counsel for Defendants George C. Zoley and Brian R. Evans*